A10A1489. THE STATE v. BENTON.

(699 SE2d 767)

ELLINGTON, Judge.

By accusation, the State of Georgia charged Jessie Benton with theft by conversion, OCGA § 16-8-4 (a). Assisted by counsel, Benton reached an agreement with the prosecutor to plead guilty. After the prosecutor described the factual basis for Benton's guilty plea, the Superior Court of Bibb County determined that the facts as alleged could not support a conviction for theft by conversion because there

was no allegation that Benton had agreed to make a specified disposition of the subject property, as required to prove that offense.[1] Based on this determination, the trial court rejected Benton's guilty plea and sua sponte dismissed the accusation. The State appeals pursuant to OCGA § 5-7-1 (a) (1),[2] contending that the trial court erred in finding that there was no factual basis that Benton had agreed to make a specified disposition of the subject property. For the reasons explained below, we affirm in part, vacate in part, and remand.

Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, we review de novo the trial court's application of the law to undisputed facts. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

The State charged that, on or about July 30, 2008, Benton,

> after having lawfully obtained property, to wit: [a] 1991 Toyota pickup truck, with a value in excess of $100.00, under an agreement to make a specified application of said vehicle, did knowingly convert said property to [his] own use in violation of such agreement by failing to pay as directed by the agreement and reporting the property stolen[.]

At the guilty plea hearing, the prosecutor described the facts underlying the accusation as follows: "Mr. Benton came to an agreement with his boss to purchase this 1991 Toyota pickup truck. He took that pickup truck and never made any payment on it, and it was actually recovered in Houston County with some other people driving it." The prosecutor explained that, at some point, Benton's employer realized that Benton was never going to make the payments and told Benton to return the truck instead. The trial court determined that the State had failed to identify any legal obligation

---

[1] A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another including, but not limited to, leased or rented personal property, under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation. This Code section applies whether the application or disposition is to be made from the funds or property of another or from the accused's own funds or property in equivalent amount when the agreement contemplates that the accused may deal with the funds or property of another as his own. OCGA § 16-8-4 (a).

[2] "An appeal may be taken by and on behalf of the State of Georgia from [a] superior court[ ] . . . to the Court of Appeals of Georgia . . . in [a] criminal case[ ] . . . [f]rom an order, decision, or judgment . . . dismissing . . . [an] accusation[.]" OCGA § 5-7-1 (a) (1).

to make a specified disposition of the truck and, therefore, that the State was seeking to impose criminal sanctions for Benton's failure to pay a debt, which is forbidden by Georgia's Constitution.[3]

On appeal, the State argues that, "as with any other periodic payment agreement," it was "implied" in Benton's agreement with his employer that he (Benton) "no longer had the right to possess the truck if he was not making the scheduled payments" and that this constituted "an agreement to make a specified application of the truck, that being to return it" to his employer.

In general, the ownership of personal property is transferred when a seller delivers possession to the buyer, even when the seller does so before receiving payment.[4] Of course, the law recognizes many forms of secured debt, such as when a buyer agrees to return the purchased property to the seller in the event of nonpayment.[5] Under Georgia law, "the only way to create a security interest in a [motor] vehicle is under [Georgia's Motor Vehicle Certificate of Title Act, OCGA § 40-3-1 et seq.]." (Citations and punctuation omitted.) *Hairston v. Savannah River Plant Fed. Credit Union*, 216 Ga. App. 246, 247 (453 SE2d 811) (1995). The Act defines a security interest as

> an interest in a vehicle reserved or created by agreement which secures the payment or performance of an obligation, such as a conditional sales contract, chattel mortgage, bill of sale to secure debt, deed of trust, and the like. This term includes the interest of a lessor under a lease intended as security.

OCGA § 40-3-2 (13). Furthermore, the Act requires that an agreement that reserves or creates a security interest in a motor vehicle be in writing. OCGA § 40-3-2 (12).

> A security interest [in a motor vehicle] is perfected by delivery to the commissioner or to the county tag agent of the county in which the seller is located, of the county in which the sale takes place, of the county in which the

---

[3] Ga. Const. 1983, Art. I, Sec. I, Par. XXIII (prohibiting "imprisonment for debt"); see also Black's Law Dictionary (8th ed. 2004) (defining "debt" as "a specific sum of money due by agreement or otherwise"); *Scarber v. State*, 211 Ga. App. 260 (439 SE2d 83) (1993) ("OCGA § 16-8-4 is intended to punish fraudulent conversion, not breach of contract, and in order to avoid the constitutional prohibition against imprisonment for debt, the State must prove fraudulent intent. The statute cannot properly be employed in the enforcement of civil contract rights.") (citation omitted).

[4] *Quinn v. State*, 171 Ga. App. 590, 594 (9) (a) (320 SE2d 827) (1984).

[5] See OCGA §§ 11-9-101 et seq. (Uniform Commercial Code, Secured Transactions); 44-14-30 et seq. (Mortgages, Conveyances to Secure Debt, and Liens).

vehicle is delivered, or of the county wherein the vehicle owner resides[.]

OCGA § 40-3-50 (b).

> The failure to comply with the . . . Act with respect to the perfection of [a] security interest[, however,] does not affect the creation of the security interest, which remains a matter of contract between the parties. It follows that a failure to comply with the Act does not nullify the contract but merely has the effect of loss of priority where the rights of third parties who complied with the Act have intervened.

(Citations and punctuation omitted.) *Spoon v. Herndon*, 167 Ga. App. 794, 795 (1) (307 SE2d 693) (1983). From these authorities, we conclude that a security interest in a motor vehicle does not arise merely from the fact that a buyer agrees to make periodic payments after taking possession. To prove that Benton was under a legal obligation to make a specified disposition of the truck, therefore, the State was required to prove that Benton *explicitly* agreed to return the truck to his employer if he could not make the payments.[6]

Before accepting a guilty plea and entering judgment thereon, the trial court must first determine that there is a factual basis for the plea. *King v. Hawkins*, 266 Ga. 655 (469 SE2d 30) (1996); *State v. Evans*, 265 Ga. 332, 334 (2) (454 SE2d 468) (1995). The purpose of this requirement "is to protect against someone pleading guilty when that person may know what he has done but may not know that those acts do not constitute the crime with which he [or she] is charged." (Citation omitted.) *State v. Evans*, 265 Ga. at 334 (2). Uniform Superior Court Rule 33.9 provides this protection by requiring a trial judge to make "such inquiry on the record as may satisfy the judge that there is a factual basis for the plea." See *King v. Hawkins*, 266 Ga. at 656. A trial court may discern the factual basis for a guilty plea from facts put on the record at the guilty plea hearing in a wide variety of ways: the judge may question the defendant, the prosecutor may state what he or she expects the evidence to show at trial, or the court may consider material contained in parts of the record other than the guilty plea hearing, so long as that material is identified and made a part of the record for appeal. *State v. Evans*, 265 Ga. at 334-335 (2).

---

[6] *Ellis v. Brookwood Park Venture*, 161 Ga. App. 242, 243 (288 SE2d 308) (1982) ("An implicit contractual provision exists only where such provision is necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they apparently deemed it unnecessary to state it.") (citation omitted).

In this case, the method employed was for the prosecutor to state what he expected the evidence to show at trial. The prosecutor's recitation of the expected evidence, however, failed to show that, when Benton obtained the pickup truck from the seller, he explicitly agreed to return the truck to the seller if he failed to pay as agreed. Because the State failed to identify any factual basis for the essential element that Benton obtained the pickup truck under an agreement or other known legal obligation to make a specified disposition of the property, the trial court was authorized to reject Benton's guilty plea. *Head v. State*, 262 Ga. 795, 796 (2) (426 SE2d 547) (1993).[7]

The accusation, which tracked the statutory definition of theft by conversion, however, was not technically deficient.[8] Although the State failed to satisfy the trial court that there was a factual basis for a guilty plea, and the trial court may have doubted that the State would ultimately be able to carry its burden of proving Benton's guilt beyond a reasonable doubt, the court abridged the State's right to prosecute in dismissing the accusation when the State had never been put to its proof.[9] Accordingly, the trial court's order is vacated to the extent it dismissed the accusation.

*Judgment affirmed in part and vacated in part and case remanded. Andrews, P. J., and Doyle, J., concur.*

DECIDED JULY 21, 2010.

*Howard Z. Simms, District Attorney, Garrison A. Wood, Assistant District Attorney*, for appellant.

---

[7] We note that Benton did not seek to enter a guilty plea while claiming to be innocent under the procedure set forth in *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970). See *Duque v. State*, 271 Ga. App. 154 (1) (608 SE2d 738) (2004).

[8] See OCGA § 17-7-54 (a) ("Every indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct."); *Davis v. State*, 272 Ga. 818, 819 (1) (537 SE2d 327) (2000) (Where an accusation used the language of the statute, included the essential elements of the offense, and was sufficiently definite to advise the defendant of what he must be prepared to confront, the accusation was not subject to dismissal.).

[9] See *State v. Brooks*, 301 Ga. App. 355, 360 (687 SE2d 631) (2009) (The trial court abridged the State's right to prosecute an accused when it dismissed an indictment on a basis not authorized by law.); *Tucker v. State*, 283 Ga. App. 428 (641 SE2d 653) (2007) ("A motion for directed verdict of acquittal is not the proper way to contest the sufficiency of an indictment. A motion for a directed verdict of acquittal addresses the sufficiency of the evidence, not the sufficiency of the underlying indictment.") (citation and punctuation omitted); *State v. Young*, 260 Ga. App. 44, 47 (2) (579 SE2d 16) (2003) ("A plea in abatement on the ground that an indictment was found on insufficient evidence, or illegal evidence, or no evidence, will not be sustained, because it comes under the rule that no inquiry into the sufficiency or legality of the evidence is indulged.") (citation and punctuation omitted).

*Lark N. Bedrick, William M. Ermine*, for appellee.