A11A0207. THOMAS v. THE STATE.
(707 SE2d 547)

BLACKWELL, Judge.

The record in this case clearly shows that Otis Patrick Thomas, an automotive mechanic in Dougherty County, did not apply best business practices in the operation of his automotive repair business, did not keep the promises that he made to a customer, and may have

lied in civil proceedings commenced by that customer. But the question presented here is whether the State offered sufficient evidence at his criminal trial from which a rational trier of fact might conclude beyond a reasonable doubt that Thomas converted a van, which he had promised to repair but apparently never did, in violation of OCGA § 16-8-4 (a). We think the State did not offer sufficient evidence, and we reverse Thomas's conviction for theft by conversion.

Viewed in the light most favorable to the verdict,[1] the record shows that the customer paid $1,675 to Thomas for the replacement of the engine in her van. Thomas initially promised the customer that the work would be complete by February 8, 2007, but Thomas later told her that the work would not be complete until February 16. On February 16, Thomas again contacted the customer and told her that the work would not be done until February 20, ostensibly because the crew that helped Thomas with his repair work had quit. The customer then informed Thomas that she was renting another vehicle to drive while Thomas was repairing her van, and Thomas told her that he would reimburse the costs of the rental car.

On March 5, the customer called Thomas several times to inquire about her van, but Thomas did not return these calls until March 12, at which time he told her that he was exhausted and would not be done with the work on the van until the following day. On March 13, Thomas went to the customer's residence and showed her a video recording of her van. According to the customer, Thomas attempted to explain all of the work that was required to replace the engine in the van, but she did not understand what he was saying. Thomas told her that he could finish the work by the next day.

When the customer did not hear from Thomas on March 14, she went to the shop at which he worked and saw her van "raised very high on the rack," although Thomas was working at the time on another vehicle. On March 17, the customer and a companion went to the shop,[2] where they confronted Thomas about the van. Her companion told Thomas that he must finish his work on the van before March 23, and Thomas assured them that he would do so "long before" that date. The customer admitted that Thomas had done at least some work on her van by the time they visited the shop on March 17, inasmuch as she observed during that visit that the old engine had been removed and that a crate was sitting next to the old

---

[1] On an appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the verdict. *Matthiessen v. State*, 277 Ga. App. 54 (625 SE2d 422) (2005).

[2] It is unclear from the record whether the companion was the customer's son or simply a friend with whom she had a maternal-like relationship.

engine in the shop, which, she believes, contained the new engine to be installed in the van. Between March 19 and March 23, the customer attempted to contact Thomas each day, and she saw her van lifted on the rack whenever she drove by the shop. Thomas did not respond, however, to her additional attempts to contact him.

On March 26, the customer filed a civil complaint in magistrate court against Thomas. At a hearing before the magistrate court on May 9, Thomas claimed that the work on the van was complete, and the trial court ordered him to deliver it to the customer on the next morning. The magistrate court also ordered Thomas to pay damages of approximately $3,000 to the customer. Thomas never delivered the van, however, and the customer testified at Thomas's criminal trial about her belief that Thomas no longer worked at the shop where her van had been stored and that the shop's owner had arranged for someone to tow her van to a junkyard in May 2007. The customer apparently never recovered her van.

By accusation, the district attorney charged Thomas with one count of theft by conversion. The accusation alleged that Thomas, "having lawfully obtained a 1996 Ford Windstar, property belonging to [the customer], under an agreement to make a specified disposition of such property, did knowingly convert such property to his own use in violation of the agreement." The accusation notably did not accuse Thomas of having converted the money that the customer had paid to him for the repair of her van.

1. Thomas claims that the evidence presented at his bench trial is insufficient to sustain his conviction for theft by conversion. When this Court considers whether the evidence is sufficient to support a conviction, we must determine "whether any rational jury could find, in the evidence adduced at trial, proof of guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict." *Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010); see also *Cutrer v. State*, 287 Ga. 272, 274 (695 SE2d 597) (2010). As long as there is some competent evidence, even if contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict. *Ferguson*, supra at 233 (1); see also *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). On appeal, Thomas contends that the evidence shows merely that he failed to fulfill his obligations to repair and return the van, not that he converted it.

Thomas was charged with, and convicted of, violating OCGA § 16-8-4 (a), which provides:

A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another including, but not limited to, leased or rented

personal property, under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation. . . .

As we have cautioned before, this statute is intended to punish the fraudulent conversion of property, not mere breaches of contract or broken promises. *State v. Benton,* 305 Ga. App. 332, 334, n. 3 (699 SE2d 767) (2010); see also *Terrell v. State,* 275 Ga. App. 501, 501 (621 SE2d 515) (2005) ("The presence of fraudulent intent distinguishes criminal theft by conversion from a breach of contract."); *Scarber v. State,* 211 Ga. App. 260, 260 (439 SE2d 83) (1993) ("OCGA § 16-8-4 is intended to punish fraudulent conversion, not breach of contract, and in order to avoid the constitutional prohibition against imprisonment for debt, the State must prove fraudulent intent."). So, evidence sufficient to show that someone breached a contract and broke his promises may not be sufficient to prove that he committed criminal conversion. To prove criminal conversion, the State must prove something more, that the defendant misappropriated the property at issue to his own use with fraudulent intent. In this case, we think the State failed to do so.

Here, the evidence shows clearly that Thomas abandoned his work on the van, that he apparently abandoned the van at the shop at which he had worked, and that he never delivered the van to the customer. He did these things despite his promises to complete the work, his repeated assurances that the work would soon be complete, his statement to the magistrate court that he had, in fact, completed the work, and the direction of the magistrate court to deliver the van to the customer. But there is no evidence that Thomas drove the van, that he cannibalized it for spare parts, or that he used it for any other purpose, except to perform work upon it. There is no evidence that Thomas did anything to conceal the whereabouts of the van from the customer or to keep her from recovering possession of it.[3] And although it appears from the record that the van ultimately was taken from the shop to a junkyard, nothing in the record suggests that Thomas had anything to do with the disposal of the van. Indeed, the customer admitted her belief that the owner of the shop made the decision to tow away her van after Thomas quit working at the shop.

---

[3] The victim testified that she did not take her van home when she visited the shop and saw it there because it had no engine and, therefore, could not be driven. But there is no testimony that, for instance, Thomas would not have permitted her to have the van towed from the shop.

The State notes that the evidence would authorize a trier of fact to conclude that Thomas, on more than one occasion, made misrepresentations about the repair of the van and ignored the customer when she attempted to contact him, and the State contends that this evidence, when combined with the undisputed failure of Thomas to return the van to the possession of the customer, is sufficient to prove that Thomas converted the van with fraudulent intent. In *Terrell*, supra, we found sufficient evidence to sustain a conviction for criminal conversion of a wood chipper where the defendant made misrepresentations to the company from which he rented it, ignored repeated attempts to contact him, and never returned the chipper to the possession of the company. 275 Ga. App. at 501-502. But *Terrell* differs from this case in several important respects.

First, the misrepresentations in *Terrell* were misrepresentations about where the defendant and the wood chipper might be found, and the defendant ignored repeated attempts to contact him at a time when the owner was searching for, but could not locate, the chipper. See id. at 502. Here, on the other hand, the evidence shows that Thomas's misrepresentations concerned the status of his work on the van and the time of its completion, not its whereabouts. And at the times Thomas failed to respond to attempts by his customer to contact him, the record suggests that the van was at the shop, precisely where the customer knew it to be. Unlike *Terrell,* the evidence in this case does not authorize the inference that Thomas engaged in an effort to conceal the whereabouts of the van. Second, our opinion in *Terrell* does not suggest that the record there contained any evidence of what really happened to the wood chipper. See id. at 501-503. Here, on the other hand, the record indicates that the van was towed away to a junkyard, not by Thomas, but by the arrangement of the shop owner. Finally, in *Terrell,* the defendant fled to Mexico after failing to return the wood chipper, where he lived under an alias for some time. See id. at 502. Here, there is no evidence that Thomas fled beyond the reach of the courts. To the contrary, Thomas appeared at a hearing in the magistrate court after his customer filed a lawsuit against him.

We think this case is more like *Scarber,* supra, and *Barrett v. State,* 207 Ga. App. 370 (427 SE2d 845) (1993). In *Scarber,* the defendant had arranged to purchase antique furniture and took possession of the furniture from its owner. The defendant was convicted of theft by conversion after he failed to pay the purchase price to which he and the owner had agreed, despite assurances that he would do so, failed to return the furniture to the owner, and failed to respond to attempts to contact him. 211 Ga. App. at 260. We reversed the conviction, holding that the evidence was insufficient to prove beyond a reasonable doubt that the defendant converted the

furniture to his own use with fraudulent intent. In explaining our holding, we specifically noted the absence of any evidence about the ultimate disposition of the furniture or that the defendant did anything with the furniture after he obtained possession of it. Id. at 260-261. Here, of course, we have some evidence about what finally happened to the van, but that evidence suggests that its disposal was arranged by someone other than Thomas.

In *Barrett*, the defendant rented equipment from a video rental store, he failed to return it as promised, and the store was unable to contact him. 207 Ga. App. at 370. He was convicted of theft by conversion, and we reversed, finding the evidence insufficient. We noted that the State "presented no evidence regarding what happened to the equipment and failed to show that [the defendant] knowingly and with fraudulent intent appropriated it for his own use." Id. Here, as in *Barrett,* the evidence simply does not prove that Thomas misappropriated the van to his own use and did so with fraudulent intent.

Thomas's treatment of his customer was contemptible and reprehensible. But the evidence is insufficient to prove beyond a reasonable doubt that it amounted to a crime. We, therefore, reverse Thomas's conviction for theft by conversion.

2. Thomas also contends on appeal that the trial court erred when it required him, as part of his sentence, to pay restitution that exceeded the actual amount of loss sustained by the customer. Because we reverse his conviction, this enumeration of error is moot. See *Crane v. State*, 302 Ga. App. 422, 424 (3) (691 SE2d 559) (2010).

*Judgment reversed. Barnes, P. J., and Adams, J., concur.*

DECIDED MARCH 9, 2011.

*Kevin C. Armstrong*, for appellant.
*Gregory W. Edwards, District Attorney*, for appellee.