## A12A0150. WADE v. THE STATE.
### (727 SE2d 275)

McFADDEN, Judge.

Terry Alexander Wade was convicted of armed robbery. See OCGA § 16-8-41. He appeals from the denial of his motion for new trial on the ground that he received ineffective assistance of trial counsel. Because he has not demonstrated that trial counsel's performance was both deficient and prejudicial to his defense, we affirm.

The trial evidence, viewed most favorably to the jury's verdict, see *Hinton v. State,* 292 Ga. App. 40, 41 (663 SE2d 401) (2008), demonstrated that at around 11:00 a.m. on January 27, 2005, two masked men entered a Putnam County bank. One yelled: "This is a bank robbery. Everybody on the floor or we'll kill you." One of the men used an orthopedic crutch to jump over the teller counter, while the other man remained in the bank lobby. The man who had jumped over the counter poked a bank teller in the side with something and told her she would be hurt if she did not cooperate. He demanded to be taken to the vault and for money to be placed in a duffle bag. The two men then left the bank, having taken approximately $243,000.

The men fled in a car that was found abandoned a short time later. When law enforcement officers searched the abandoned car they found a fingerprint that an analyst with the Federal Bureau of Investigation determined belonged to Wade. Other evidence was presented that also linked Wade to the bank robbery. Several eyewitnesses to the robbery described the man who jumped over the teller counter as having a distinctive facial structure that could be discerned through his sheer mask — a narrow face, long jaw bone, and protruding mouth — and they testified that Wade's facial structure

resembled that of the robber. A cellular telephone belonging to Wade's wife and sometimes used by Wade had been used in the bank's vicinity within minutes of the robbery. In early January 2005, Wade (a resident of Ohio) had told a friend that he was planning a trip to Atlanta to "work." Less than a week after the bank robbery, Wade purchased a car for $2,900; the person who sold him the car testified that Wade paid for it in cash using hundred dollar bills that he pulled out of a bag in the seller's presence. After his arrest, Wade told his sister in a telephone conversation that "green stuff" was "all right where it's at." A search of Wade's house produced, among other things, a bill for service for the cellular telephone that had been used near the bank, which was missing the specific page reflecting the date of the bank robbery, and a composition notebook containing notes about "armed robbery, robbery, statu[t]es, [and] enhancements." And similar transaction evidence was presented that Wade had committed prior bank robberies, including one in which he had jumped over the teller counter.

In motions for new trial, Wade contended that he received ineffective assistance of counsel and asserted numerous instances of allegedly deficient performance by his trial counsel. Pertinent to this appeal, Wade argued that counsel expressed disapproval of him and impugned his character before the jury through various comments and arguments, elicited evidence of another similar transaction that the court earlier had excluded from evidence, improperly disclosed matters subject to attorney-client privilege, failed to object to references to Wade's invocation of certain constitutional rights, and opined on the strength of the state's case, including the credibility of certain state's witnesses. (Although Wade also argues on appeal that trial counsel was deficient in failing to request a jury instruction on alibi, the record shows only that he claimed to the trial court that the court's failure to give such instruction was a ground for a new trial, not that the lack of the instruction supported a finding of ineffective assistance of counsel.)

At hearings on Wade's motions for new trial, his trial counsel testified that some of the complained-of actions were oversights. But trial counsel explained that other actions were part of a strategy of acknowledging the credibility of the state's witnesses and the problems in Wade's past but arguing that the state had not shown that Wade had committed this particular crime. He stated that he had succeeded with this strategy in the past. He also testified that he and Wade had specifically prepared for Wade to give limited trial testimony in support of this strategy, but that at trial Wade lost focus and unexpectedly began discussing his involvement in other criminal

activities, leading trial counsel to try to "rebuild" Wade's testimony through some of the complained-of actions.

To prevail on his claim that he received ineffective assistance of trial counsel, Wade must establish that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003). The trial court concluded that Wade did not make either showing. As to deficient performance, the court found that

> [c]ounsel was apparently prepared and knowledgeable about the subject matter. His motions were appropriate and well-presented. Cross examination was thorough and consistent with the over-arching theme posited by the defense. Choices that now seem to have been less effective in light of the jury's verdict[ ] all appear to have been strategically chosen to fit with the facts and that defense theme. Mr. Wade's representation at trial, taken as a whole, was above the standards expected in the community of trial lawyers.

As to prejudice, the court found that there was "no real likelihood . . . that a different verdict would have flowed from a change in counsel's actions or strategies." In reviewing the trial court's determination, we uphold the court's factual findings unless they are clearly erroneous and review the court's legal conclusions de novo. *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000).

We need not consider whether counsel performed deficiently, because Wade has not shown that he was prejudiced. Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation and punctuation omitted.) *Hardeman v. State*, 281 Ga. 220, 221 (635 SE2d 698) (2006). Overwhelming evidence of Wade's guilt was presented at trial, and this evidence would have been presented to the jury regardless of the alleged deficiencies of counsel asserted by Wade. Consequently, we find no reasonable probability that, but for the alleged deficiencies, the trial would have resulted in a different outcome. See id. at 221-222; see also *Glass v. State*, 289 Ga. 542, 548 (6) (c) (712 SE2d 851) (2011) (finding defendant could not demonstrate prejudice from counsel's deficient performance in light of overwhelming evidence substantiating his guilt).

Wade contends, however, that prejudice should be presumed because his trial counsel's actions amounted to a constructive denial of counsel. See *Hardeman*, 281 Ga. at 222 (constructive denial of counsel is one of a narrow range of circumstances in which the prejudice component of a claim of ineffective assistance of counsel can

be presumed); *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004) (same). "[A] constructive denial is not present unless counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. The attorney's failure must be complete and must occur throughout the proceeding and not merely at specific points." (Citations and punctuation omitted.) *Turpin*, supra; see *United States v. Cronic*, 466 U. S. 648, 659 (III) (104 SC 2039, 80 LE2d 657) (1984).

The record in this case does not show an entire failure of counsel to meaningfully test the prosecution's case. To the contrary, the record demonstrates that throughout the trial Wade's counsel attempted to "hold the prosecution to its heavy burden of proof beyond reasonable doubt." *Cronic*, 466 U. S. at 656 (II), n. 19. To this end, counsel, who had spent a significant amount of time preparing for trial, made numerous objections to testimony and evidence introduced during the prosecutor's direct examinations of the state's witnesses. He objected to the eyewitnesses' in-court identifications of Wade as resembling the robber. He objected to the introduction of various pieces of evidence, including the fingerprint evidence, evidence related to the cellular telephone records, and evidence regarding Wade's telephone conversations with others leading up to the bank robbery and after Wade's arrest. He challenged and moved to exclude expert testimony regarding the scientific validity of fingerprint evidence. He attacked on cross-examination the expert fingerprint witness's methodology and the precision of her work. He challenged the chain of custody of the car in which the fingerprint was found and raised other questions about the manner in which law enforcement officers investigated the bank robbery. He attacked on cross-examination the evidence regarding the use of the cellular telephone on January 27, 2005, including evidence regarding where and when the telephone had been used and the premise that Wade was the person who used the telephone. He challenged the admission of the similar transaction evidence. He highlighted in cross-examinations differences between the similar transactions and the Putnam County bank robbery. And he challenged the trial court's exclusion of the Putnam County Sheriff from the rule of sequestration. The record thus shows that, throughout the trial, Wade's counsel challenged the prosecution's case and the trial did not "lose[ ] its character as a confrontation between adversaries." Id. at 656-657 (II).

Citing *Rickman v. Bell*, 131 F3d 1150 (6th Cir. 1997), Wade argues that he nevertheless experienced a constructive denial of counsel because his counsel acted as a "second prosecutor" by eliciting testimony about Wade's criminal history not otherwise in evidence and by disparaging him in closing argument. But the conduct of Wade's counsel is not comparable to that of counsel in *Rickman*. The

court in *Rickman* found that, throughout the trial of that case, counsel repeatedly depicted his client as "vicious and abnormal" and a "hated and violent freak," id. at 1160 (III), conduct that the court described as "worse than no representation at all." Id. at 1159. Here, in contrast, counsel's allegedly disparaging remarks were made only after Wade, through his own testimony, had depicted himself as a person deeply involved in criminal activities and a criminal culture; counsel's closing argument acknowledging this testimony sought to persuade the jury to look past Wade's other criminal conduct and focus solely on whether Wade had committed the particular crime for which he was charged. Wade blames his counsel for eliciting some of his testimony about his criminal activities. But the record shows that, although some of the testimony followed an ambiguous question by his counsel, most of Wade's testimony about his criminal activities was not responsive to any questions posed by his counsel. And although Wade complains of counsel's arguments in closing regarding the credibility of various state's witnesses, the record demonstrates that counsel used those credibility assessments to argue that, even taken as true, the witnesses' testimony left room for reasonable doubt. The record fails to show that Wade's counsel "aligned himself with the prosecution against his own client," as did the counsel in *Rickman*. Id. at 1159 (III).

Further decisions from other jurisdictions cited by Wade in support of his contention are also distinguishable, because in those cases trial counsel took positions directly contrary to the defendants' interests. See *United States v. Swanson*, 943 F2d 1070, 1074 (9th Cir. 1991) (counsel conceded no reasonable doubt existed as to defendant's guilt); *Osborn v. Shillinger*, 861 F2d 612, 628 (III) (10th Cir. 1988) (counsel made public statements that defendant was not amenable to rehabilitation, did not present at sentencing hearing available evidence contradicting state's contention that defendant was criminal ringleader, and at sentencing stressed the brutality of defendant's crimes), disapproved on other grounds, *Shafer v. Stratton*, 906 F2d 506, 509 (1) (10th Cir. 1990); *King v. Superior Court*, 132 Cal. Rptr. 2d 585, 600-601 (III) (Cal. Ct. App. 2003) (counsel offered no argument on defendant's behalf but instead actively argued and presented evidence against defendant in hearing on whether defendant had forfeited his right to counsel); *State v. Carter*, 14 P3d 1138, 1148 (Kan. 2000) (counsel overrode defendant's plea of not guilty and pursued a theory that defendant had committed a lesser crime, against defendant's wish to pursue an innocence defense). Here, in contrast, Wade's counsel consistently argued to the jury that the state had not met its heavy burden of showing beyond a reasonable doubt that Wade had committed the Putnam County bank robbery.

In summary, Wade "has not demonstrated a breakdown in the adversarial process that would justify a presumption that his conviction was insufficiently reliable to satisfy the Constitution." (Citation and punctuation omitted.) *Lyons v. State*, 271 Ga. 639, 640 (2) (522 SE2d 225) (1999). Because Wade failed to prove that he was prejudiced by any alleged deficiency, the trial court did not err in denying his motion for new trial.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

---

DECIDED APRIL 19, 2012 — ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Brian Steel*, for appellant.

*Fredric D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney*, for appellee.