**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 1, 2013**

# In the Court of Appeals of Georgia

A13A0641. HAIRSTON III v. THE STATE.

BARNES, Presiding Judge.

Percy Hairston III was charged with kidnapping with bodily injury, aggravated battery (family violence) and aggravated assault (family violence). Before his December 9, 2010 arraignment, Hairston filed a general and special demurrer, which he later amended on February 11, 2011. Following a hearing, the trial court overruled the motion and found that the demurrer was untimely. Hairston's case proceeded to trial, after which a jury found him guilty of the charged offenses. Following the denial of his motion for new trial, Hairston appeals his convictions contending that the trial court erred in denying his special demurrer and also that the evidence was insufficient. Upon our review, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys

the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted). *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006). So viewed, the evidence demonstrates that the victim, Hairston's girlfriend, picked him up in her car during her lunch break, and the couple got into an argument. As she drove, Hairston pulled the victim's hair and pushed her head into the window. The victim pulled the car over and parked to avoid having a wreck. Hairston then "started choking [the victim] and punching [her] in [her] face." When the victim saw a woman coming out of an office near where they were parked, she "got out of the car [,]. . . kicked off [her] shoes and started running. The victim yelled at the woman to call 911, but Hairston "came after [her] and . . . grabbed [her] by [her] shirt and [her] hair and pulled her . . . back to the car and put [the victim] in the back seat of the car."

The woman who called 911 had heard the victim screaming and had begun walking in that direction when the victim came running up to her and asked for help. As she dialed 911, the woman observed Hairston approach the victim, who was shoeless and disheveled, grab her by the "throat and by the back and push[] her into the car." The woman testified that Hairston was standing behind the victim with one

2

arm across the front of the victim's throat and "she almost half squealed, just kind of stopped by [Hairston] choking her. And then he threw her in the car . . . and they took off." The woman was still on her cell phone with 911 and reported that the victim had just been abducted.

Hairston drove the victim to K-Mart parking lot and stayed there for "about ten minutes" to "lay low from the police." He then drove the victim to her apartment and allowed her to pick up her children from the bus stop and go back to work. When the victim arrived back at work, a co-worker noticed that "[s]he was crying, she was shaky, her mouth was bloody and . . . [h]er teeth were messed up." One of the victim's front teeth had been pushed behind the other, causing the victim to speak with a lisp. The victim initially reported the incident to police in Murray County, but she was advised to go to the Whitfield County police because the incident had occurred in that county.

1. Although Hairston contends that the evidence was insufficient to demonstrate that the victim incurred any injury during the kidnapping rather than before the kidnapping,[1]

---

[1] "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against [her] will." OCGA § 16-5-40 (a). Furthermore, "if the person kidnapped shall have

[f]or purposes of OCGA § 16-5-40 (b), bodily injury is accomplished by the infliction of any physical injury upon a victim's body, however slight. The crime of kidnapping with bodily injury under OCGA. § 16-5-40 (b) requires only that an injury, no matter how slight, occur *during* the kidnapping incident.

(Citations and punctuation omitted, emphasis in original) *Carter v. State*, 268 Ga. App. 688, 690 (603 SE2d 56) (2004).

The evidence in this case was more than sufficient to sustain Hairston's conviction of kidnapping with bodily injury of the victim. See *Phillips v. State*, 284 Ga. App. 683, 685 (1) (b) (644 SE2d 535) (2007) (evidence the victim had a red mark on her cheek, puffiness and redness around her eyes and ears, and red marks where she was bound with the duct tape was sufficient to show physical injury during the kidnapping.)

2. Hairston also contends that the trial court erred in overruling his special demurrer. Hairston filed his special demurrer on December 1, 2010, maintaining that the indictment failed to "state with certainty the time and place" of the offenses, and failed to "adequately describe the manner of the offenses and fails to adequately

---

received bodily injury, the person convicted shall be punished by life imprisonment or by death." OCGA § 16-5-40 (b).

4

describe the *corpus delicti*. He was arraigned on December 9, 2010, and Hairston subsequently filed an amended special demurrer on February 11, 2011, asserting that the indictment was too vague and did not apprise him of exactly how he "did abduct and steal away [the victim]," held her against her will, or specify the bodily injury she received.

After a hearing on the motion, the trial court found that the amended special demurrer was untimely because the amended grounds were not connected with the original grounds that were filed in the initially filed special demurrer. The court also rejected the special demurrer on the merits.

An accused may challenge the sufficiency of an indictment by filing a general or special demurrer. A special demurrer must be "raised before pleading to the merits of the indictment … [and] if no special demurrer is made, the ground is waived." (Emphasis omitted). *Eubanks v. State*, 239 Ga. 483, 486 (238 SE2d 38) (1977). "[A] special demurrer challenges the sufficiency of the *form* of the indictment." (Emphasis in original.) *Dunbar v. State*, 209 Ga. App. 97, 98 (2) (432 SE2d 829) (1993). "By special demurrer, an accused claims, not that the charge in an indictment is fatally defective and incapable of supporting a conviction . . . , but rather that the charge is imperfect as to form or that the accused is entitled to more information." (Citations

and punctuation omitted). *Falagian v. State*, 300 Ga. App. 187, 192-193 (3) (684 SE2d 340) (2009). When determining whether an indictment is sufficient to withstand a special demurrer, the applicable standard is

> not whether [the indictment] could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

(Punctuation and footnote omitted.) *State v. Barnett*, 268 Ga. App. 900, 900-901 (1) (602 SE2d 899) (2004).

Here, the special presentment charged that Hairston did, "abduct and steal away [the victim], a person, without lawful authority and did hold said person against her will, and said person received bodily injury." OCGA § 16-5-40 (a) and (b) provide that kidnapping with bodily injury occurs when "[a] person . . . abducts or steals away any person without lawful authority or warrant and holds such person against [her] will," and the "the person kidnapped shall have received bodily injury."

Pretermitting the issue of the timeliness of the amended special demurrer, the trial court did not err in overruling it on the merits. In his amended special demurrer

6

and at trial, Hairston argued that the indictment should specify more specifically the movement that occurred to satisfy the asportation element of the kidnapping count because he could admit to abducting and stealing away the victim, but not be guilty of kidnapping under the statute because "the movement could be incidental to the other two [family violence] charges." However, as the trial court noted, whether the movement was sufficient for a conviction on the kidnapping charge is a jury determination. Moreover, "[a] motion seeking to dismiss an indictment on the ground that the [S]tate cannot prove facts essential to the charge is analogous to a motion for summary judgment in a civil case, and there is no basis in Georgia criminal practice for what, in civil practice, would be termed a motion for summary judgment." (Punctuation and footnotes omitted.) *Rader v. State*, 300 Ga. App. 411, 417 (3) (b) (685 SE2d 405) (2009), See generally *State v. Benton*, 305 Ga. App. 332, 336 (699 SE2d 767) (2010) (the trial court abridged the State's right to prosecute the defendant when it dismissed the accusation on the basis that the State may not be able to carry its burden of proving the defendant's guilt before the State was required to put forth its evidence).

OCGA § 17-7-54 (a) holds that, "[e]very indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature

7

of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." To that end, where, as here, a presentment used the language of the statute, included the essential elements of the offense, and was sufficiently definite to advise Hairston of what he must be prepared to confront, it was not subject to dismissal. *Davis v. State*, 272 Ga. 818, 819 (1) (537 SE2d 327) (2000).

*Judgment affirmed. Miller and Ray, JJ., concur.*