**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 8, 2016**

# In the Court of Appeals of Georgia

A15A2362. ANDEMICAL v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Samuel Andemical appeals his conviction for kidnapping with bodily injury, aggravated assault, and false imprisonment. On appeal, Andemical contends that the trial court erred in admitting a recording of a conversation with his sister while he was in jail, erred in denying his special demurrer, erred in failing to strike two jurors for cause, and erred in its charge to the jury on kidnapping with bodily injury. He also maintains that trial counsel was ineffective, and that the State failed to prove asportation as an element of his kidnapping conviction. Following our review, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence demonstrates that before dawn on September 27, 2010, a worker at a children's

learning center was looking out of the window when she observed the victim attempt to run from a car immediately after it pulled into the parking lot and stopped. A man, later identified as Andemical, chased her on foot. Andemical grabbed the victim by her hair, and after the victim fell to the ground, began "punching, kicking, [and] stomping" her. He dragged the victim by the hair back to the car, and when she ran from the car again, Andemical punched and kicked her, then picked the victim up and put her in the trunk of his car. When he attempted to close the trunk, he was unable to do so because the victim was fighting to get out. The witness called 911, and when police arrived, they observed the victim's legs hanging out of the trunk of the car, and Andemical was still attempting to close the trunk. When he saw police, Andemical ran but was almost immediately captured and taken into custody.

The victim testified that she and Andemical were in a relationship and had a two-month-old baby at the time of the incident. She further testified that on the night of the incident, the couple had gone out to a club and had gotten drunk. The two of them got into an argument when they were leaving, Andemical pushed her, and the couple started fighting outside of the club. She further testified that while driving away from the bar, she had opened the car door to get out of the car, and that when Andemical stopped the car, she had attempted to run away. The victim testified that

2

Andemical grabbed her and beat her, and that she tried to run away "two or three times," but that she did not remember much of what happened that morning. She recalled that a young woman had called the police.

Andemical was charged with aggravated assault, kidnapping, false imprisonment, misdemeanor family violence battery, and misdemeanor obstruction of a law enforcement officer. He was later re-indicted for kidnapping with bodily injury, aggravated assault, and false imprisonment, and the trial court entered an order of nolle prosequi on the first indictment. Following a jury trial, he was found guilty of all three counts and sentenced to life in prison for kidnapping with bodily injuries, and concurrent sentences of 20 years and 10 years, respectively, for aggravated assault and false imprisonment.

1. Andemical first contends that the trial court erred in admitting into evidence a recording of a jail conversation he had with his sister. He contends that the State did not present evidence of his implied consent to the recording, and did not lay a proper foundation for admission of the recording. We do not agree.

At trial, State presented the recording and a transcript of that recording of a telephone conversation between Andemical, his sister, and the victim that was recorded

3

while he was incarcerated in the DeKalb County jail. The victim authenticated the recording as that of the telephone conversation she had with Andemical.

> The State may lay a proper foundation for admission of a recorded telephone conversation of an inmate by showing that the recording device was working properly and that the recording was accurately made; the manner in which it was preserved; that no alterations have been made to the recording; the identity of the speakers; and that the inmate was aware that the conversation was subject to being recorded.

*Lowe v. State*, 310 Ga. App. 242, 242-243 (1) (712 SE2d 633) (2011). However, as was done in this case, an audiotape may also be authenticated by the testimony of one who was a party to the events recorded on the tapes. *Hudson v. State*, 273 Ga. 124, 127 (3) (538 SE2d 751) (2000); *Smallwood v. State*, 296 Ga. App. 16, 22 (4) (a) (673 SE2d 537) (2009) (videotape was properly authenticated and admissible because witnesses portrayed in the tape identified their own voices and testified that the tape accurately depicted their conversation).

Regarding Andemical's contention that the State did not demonstrate his implied consent to be recorded,

> OCGA § 16-11-62 (4) prohibits any person from intentionally and secretly intercepting a telephone call by use of any device, instrument or apparatus. However, OCGA § 16-11-66 (a) provides an exception to this

4

rule where one of the parties to the communication has given prior consent. Such consent can be either express or implied. This Court has found implied consent to the recording of a phone call when an inmate is told at the beginning of the telephone conversation that the call is subject to being monitored or recorded. In this case, it is undisputed that [Andemical] was told . . . during his phone call[] that the calls could be recorded or monitored. This is sufficient to establish [Andemical's] implied consent regarding the recording of his phone conversations.

(Citations and footnote omitted.) *Boykins-White v. State*, 305 Ga. App. 827, 833 (5) (b) (701 SE2d 221) (2010). See *Smith v. State*, 254 Ga. App. 107, 108-109 (2) (a) (561 SE2d 232) (2002). Moreover, OCGA § 16-11-62 (2) (A) provides, in pertinent part,

that it *shall not be unlawful* . . . [t]o use any device to observe, photograph, or record the activities of persons incarcerated in any jail, correctional institution, or other facility in which persons who are charged with or who have been convicted of the commission of a crime are incarcerated, provided that such equipment shall not be used while the prisoner is discussing his or her case with his or her attorney.

(Emphasis supplied.) Thus, under the facts of this case, the trial court did not err in admitting into evidence the recorded conversation between Andemical, his sister, and the victim.

2. Andemical also contends that his rights to due process under the Fifth and Fourteenth Amendments of the U. S. and Georgia Constitutions were violated when the trial court denied his special demurrer. He maintains that the kidnapping with bodily injury count of the indictment did not sufficiently apprise him of whether the kidnapping incident was alleged to have occurred outside the bar or the daycare center.

Shortly before trial, Andemical filed a special demurrer in which he maintained that the kidnapping with bodily injury count of the indictment was insufficient because it was vague and lacked specificity as to "where [the victim] was unlawfully abducted and held against her will or how this alleged conduct is purported to have happened." The trial court waived the timeliness issue and conducted a hearing on the motion.[1] At the hearing, Andemical argued that the facts of the case would show that there were two possible alleged kidnappings – when the couple left the bar and later at the daycare center parking lot– and that he was at a disadvantage because he did not know which of the incidents the "State wishes to prosecute." The trial court denied the motion

---

[1] A special demurrer must be "raised before pleading to the merits of the indictment … [and] if no special demurrer is made, the ground is waived." (Emphasis omitted). *Eubanks v. State*, 239 Ga. 483, 486 (238 SE2d 38) (1977).

finding, among other things, that the indictment was "completely accurate to give [Andemical] notice."

> The true test of the sufficiency of an indictment to withstand a special demurrer is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

(Citations and punctuation omitted.) *State v. Wyatt*, 295 Ga. 257, 260 (2) (759 SE2d 500) (2014).

Per the language of the kidnapping with bodily injury count of the indictment, Andemical "did unlawfully abduct and steal away [the victim] without lawful authority or warrant and held such person against her will, said act resulting in bodily injury to [the victim]." OCGA § 16-5-40 (a) provides that "[a] person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." If the kidnapped victim receives a bodily injury, the offender can be sentenced to life imprisonment. See OCGA § 16-5-40 (d) (4). OCGA § 17-7-54 (a) provides that

"[e]very indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." And when, as here, the indictment used the language of the statute, included the essential elements of the offense, and was sufficiently definite to advise Andemical of the charge against him and enable him to put forth an adequate defense to kidnapping with bodily injury, it was not subject to special demurrer. *Hairston v. State*, 322 Ga. App. 572, 576 (2) (745 SE2d 798) (2013).

Moreover, "[Andemical] must show that he was prejudiced by being tried on a defective accusation; without harm, an erroneous overruling of a special demurrer is not a basis for reversal." *Davis v. State*, 272 Ga. 818, 819-820 (1) (537 SE2d 327) (2000). This, he has not done.

3. Andemical also contends that the trial court erred in failing to strike two jurors for cause. Juror 4 stated during voir dire that she had been assaulted by a female friend and had to defend herself, and when questioned further stated that violence against women was one of her biggest "pet peeves." When asked if she would have difficulty giving Andemical "a fair shake," Juror 4 stated that to overcome what she

8

believed about domestic violence, "it would have to be some powerful evidence," but that "I think I could . . . listen to the evidence, but I'm not sure."

Juror 18 said that as the child of domestic violence he would have bias against a person charged with domestic violence. Juror 18 further expressed that he had formed no opinion about the case and that he did not have a bias against anyone in the case. The trial court denied Andemical's motion to strike the jurors for cause.

> An appellate court pays deference to the trial court's resolution of any equivocations or conflicts in a prospective juror's responses. The determination of a potential juror's impartiality is within the trial court's sound discretion, and the trial court will only be reversed on such matter upon finding a manifest abuse of discretion. The law does not require the striking of jurors simply because they express some doubt of their own impartiality.

(Citations and punctuation omitted.) *Grimes v. State*, 296 Ga. 337, 343 (1) (c) (766 SE2d 72) (2014). In reviewing responses, we conclude that the trial court did not abuse its discretion in finding that both jurors "would remain impartial despite [their] past experience[s] and [their] honestly expressed concerns about the possible impact of that experience upon [their] deliberations." (Citation and punctuation omitted.) *Roberts v. State*, 276 Ga. 258, 259 (2) (577 SE2d 580) (2003). Juror 4 and Juror 18's expressed

9

opinions were not so fixed as to demand a finding that they would be unable to set them aside and base their decision only on the evidence presented at trial. Accordingly, the trial court did not abuse its discretion when it failed to strike the jurors for cause.

4. Andemical also contends that the trial counsel was ineffective by failing to object to the State's cross-examination of a witness that elicited bad character evidence and to improper statements made during its closing argument.

> [T]o establish ineffectiveness of trial counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Failure to satisfy either prong of this test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.

(Citations and punctuation omitted.) *Brown v. State*, 321 Ga. App. 765, 766 (743 SE2d 452) (2013).

(a) *Cross-examination of witness*.

10

Andemical's sister was asked during cross-examination by the State if, when she placed the three-way call between her brother and the victim, she knew that she was "violating a direct order of the court for him not to have any contact with [the victim]." She responded that she did not, and the State showed her a no contact order from the court, and the sister again stated that she was not aware of the order. Andemical's trial counsel did not object, but on re-direct asked the sister if she was "present at [Andemical's] bond hearing where these conditions were imposed," and she responded that she was not.

At the motion for new trial hearing, when asked why he did not object on the grounds of improper character evidence, trial counsel testified that "in hindsight, maybe I should have. But . . . I thought that I could rehabilitate her on redirect." Pretermitting whether trial counsel was deficient by failing to object to this line of questioning, Andemical has not met his burden of showing prejudice. The overwhelming evidence of his guilt forecloses the reasonable probability that the trial result would have been different if trial counsel had objected to the testimony. See *Wade v. State*, 315 Ga. App. 668, 670 (727 SE2d 275) (2012). It is not enough for Andemical to show that the errors had some conceivable effect on the outcome of the proceedings; he must establish a reasonable probability that but for the error, his trial

would have ended differently. See *Lenoir v. State*, 322 Ga. App. 583, 590 (3) (c) (745 SE2d 824) (2013). As Andemical has failed to show a reasonable probability that the outcome of his trial would have been different, the trial court did not err in denying his motion for a new trial on the ground of ineffective assistance of counsel.

*(b) Closing argument.*

During closing argument, the State argued that "[Andemical] had his sister call [the victim] and violate another bond order that said, no contact. And he hid that information from that sister." Andemical contends that trial counsel was ineffective for failing to object to the statements because of the prejudicial impact of the bad character evidence. Again, Andemical has failed to show a reasonable probability that the outcome of his trial would have been different absent that error. *Sterling v. State*, 267 Ga. 209, 213 (8) (477 SE2d 807) (1996) (improper closing argument harmless given overwhelming evidence of guilt and high probability that argument did not contribute to jury's verdict); *Moore v. State*, 242 Ga. App. 249, 251-252 (1) (b) (529 SE2d 381) (2000).

5. Andemical next contends that the trial court violated his right to due process by failing to charge the jury on kidnapping with bodily injury. This contention is meritless.

12

The trial court's charge to the jury was an almost verbatim recital of the pattern jury charge for kidnapping with bodily injury. Specifically, the trial court charged that:

> When, during a kidnapping, the person abducted receives any bodily injury, however slight, then that constitutes kidnapping with bodily injury. It is not necessary that the State show that the defendant directly – directly committed, or caused, nor even intended the injury to the alleged victim nor that the act of kidnapping directly produced the injury. However, the evidence must show beyond a reasonable doubt that any such injury was caused during a period of and in some way connected to the alleged abduction.

See 2 Ga. Jury Instructions -Criminal § 2.26.31. The trial court then charged the jury that "a lesser included offense to [kidnapping with bodily injury] is kidnapping. A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." The trial court read the indictment to the jury verbatim at the beginning of its charge, explaining that Andemical was charged with kidnapping with bodily injury in that he did "unlawfully abduct and steal away [the victim] without lawful authority or warrant and held such person against her will, said act resulting in bodily injury to [the victim.]" Andemical did not object to the charge as given, but contends that the charge as given should be reviewed for plain error because the trial

13

court did not clarify that the kidnapping charge as a lesser included offense applied to the kidnapping with bodily injury charge, and did not state that the kidnapping definition was the same for the greater offense. Andemical does not elucidate for this Court's benefit what charge the trial court should have given on kidnapping with bodily injury.

Even assuming that, as Andemical contends, a jury of ordinary intelligence would have been confused that, because of the charge as given, the kidnapping definition did not apply to the kidnapping with bodily injury charge, and reviewing this contention for plain error, we discern no reversible error. In reviewing a jury charge for plain error, "we must determine whether there is an error that has not been affirmatively waived, is clear and obvious, affects the defendant's substantial rights, and seriously affects the fairness, integrity or public reputation of the judicial proceedings." (Citation and punctuation omitted.) *Durham v. State*, 292 Ga. 239, 241 (3) (734 SE2d 377) (2012). Applying this standard to the facts of this case, we discern no plain error.

6. We also find no merit to Andemical's contention that the State failed to prove asportation as an element of kidnapping. Under Georgia law, "[f]or the offense of kidnapping to occur, slight movement shall be sufficient; provided, however, that any

14

such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense." OCGA § 16-5-40 (b) (1). The statute further provides that movement of the victim "shall not be considered merely incidental to another offense if it: (A) Conceals or isolates the victim; (B) Makes the commission of the other offense substantially easier; (C) Lessens the risk of detection; or (D) Is for the purpose of avoiding apprehension." OCGA § 16-5-40 (b) (2). Evidence that Andemical captured the victim as she attempted to escape the assault, dragged her back to the car and put her into the trunk of the car, and attempted to close the trunk with the victim inside was sufficient to meet the slight movement requirement to prove the asportation element of kidnapping with bodily injury. See *Dennis v. State*, 293 Ga. 688, 690 (1) (748 SE2d 390) (2013) (placing bound and duct-taped victim in back seat of automobile was not incidental to the murder of victims).

The trial court did not err in denying Andemical's motion for a new trial on this ground.

*Judgment affirmed. McMillian, J., concurs. Ray, J. concurs fully in Dvisions 1, 2, 4, 5, & 6, and in the judgment as to Division 3.*

15