**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 19, 2021**

# In the Court of Appeals of Georgia

A21A0209. HUTZEL v. THE STATE.

RICKMAN, Presiding Judge.

Following a jury trial, Alan Hutzel was convicted of wearing a mask to conceal identity[1] and obstruction of an officer.[2] On appeal, Hutzel contends that the trial court erred by denying his motion for directed verdict, denying his constitutional challenge to OCGA § 16-11-38, denying his special demurrer, and denying his two motion in limines. For the following reasons, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the

---

[1] OCGA § 16-11-38 (a).

[2] OCGA § 16-10-24 (a).

evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Johnson v. State*, 340 Ga. App. 429, 430 (797 SE2d 666) (2017).

So viewed, the record shows that in April 2018 there was a planned rally for the National Socialist Movement ("NSM") in the City of Newnan ("the City"). The NSM group applied for and received a permit for the rally from the City and a law enforcement officer testified that officers "prepared months in advance" for both the NSM[3] protestors and anticipated counter- protestors from potential Antifa[4] groups. A law enforcement officer testified that both groups were known for violence.

On the day of the rally, law enforcement officers encountered a group of counter-protestors gathered at an intersection of a public roadway. The counter-protestors were "singing, chanting, beating on a drum." A law enforcement officer observed that multiple individuals in the crowd were masked. Some of the counter-

---

[3] NSM stands for the National Socialist Movement and a law enforcement officer testified that it is "a Nazi group."

[4] A law enforcement officer testified that Antifa is an "anti-facist" group and that "[t]he message of Antifa is to disrupt [NSM] by whatever means necessary."

protestors were wearing backpacks and atleast one protestor was outfitted with a make-shift shield containing an Antifa symbol and protruding screws.

A law enforcement officer testified that he instructed the masked protestors to remove their masks. The officer further testified that "almost immediately, as I began to address the group, they . . . began to focus their attention on us. There were individuals who would come up with cameras and demand my name. . . . Others were pointing their middle finger at us; others were saying expletives towards the police; others were chanting; the drum was beating." The counter-protestors were chanting, "'F - - - the police,' as they, you know, shot us the bird, people calling us Nazis and stuff like that." They also began to "act[] in concert with one another to help shield these individuals who wore masks in the group."

Hutzel was one of the masked counter-protestors. Hutzel failed to comply with law enforcement officers' orders to remove to his mask and he was ultimately arrested. The law enforcement officer who arrested Hutzel testified that "[Hutzel] was part of this group that was acting what I construed violently. He was asked to take the mask off multiple times, but never did." Hutzel testified that law enforcement officers instructed him to remove his mask and that he refused to comply with that instruction.

Hutzel also admitted that he interlocked his arms with other counter-protestors as officers approached him.

Hutzel was initially charged in an accusation with wearing a mask to conceal identity. After Hutzel filed a demurrer, the State amended the accusation by including an allegation in the wearing a mask to conceal identity count and adding a misdemeanor obstruction of an officer count. Hutzel was convicted on both counts.[5]

1. Hutzel contends that the trial court erred by denying his motion for directed verdict.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. A directed verdict of acquittal should be granted only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal. OCGA § 17-9-1. In reviewing the denial of a motion for a directed verdict made at the close of the State's case, an appellate court considers not only the evidence produced in the

---

[5] Hutzel originally filed his notice of appeal in the Supreme Court of Georgia. After reviewing Hutzel's brief, however, the Supreme Court determined that its constitutional question jurisdiction was not invoked, and it transferred the case to this Court.

4

State's case-in-chief, but also any evidence introduced subsequent to the motion by the defense.

(Citation and punctuation omitted.) *Sledge v. State*, 312 Ga. App. 97, 98 (1) (717 SE2d 682) (2011).

(a) Wearing a mask to conceal identity.

The accusation charged that Hutzel

while upon the area . . . being a public way, did unlawfully wear a mask, by which a portion of his face was so hidden as to conceal his identity, with the intent to threaten, intimidate, or provoke the apprehension of violence did so with reckless disregard for the consequences of his conduct, to wit: [Hutzel] did wear said mask during a rally of the National Socialist Movement[.]

See OCGA § 16-11-38 (a) (A person is guilty of a misdemeanor when he wears a mask . . . by which any portion of the face is so hidden, concealed, or covered as to conceal the identity of the wearer and is upon any public way or public property.)[6]

---

[6] The incident giving rise to the charges in this case occurred prior to the COVID-19 pandemic. We note that Executive Order No. 04.13.20.02 ordered that OCGA § 16-11-38 (a) "shall not apply to any person wearing 'a mask, hood, or device by which any portion of the face is so hidden, concealed, or covered as to conceal the identity of the wearer' if that person is wearing such device for the purpose of complying with the guidance of any healthcare agency or to prevent the spread of COVID-19." And effective July, 1 2021, OCGA 16-11-38 has been amended to include as an exception wearing a mask to prevent the spread of COVID-

5

Our Supreme Court has held that to obtain a conviction under OCGA § 16-11-38 (a), the State must show "that the mask-wearer (1) intended to conceal his identity, and (2) either intended to threaten, intimidate, or provoke the apprehension of violence, or acted with reckless disregard for the consequences of his conduct or a heedless indifference to the rights and safety of others, with reasonable foresight that injury would probably result." *Daniels v. State*, 264 Ga. 460, 464 (2) (b) (448 SE2d 185) (1994).

Here, the evidence showed that Hutzel was masked and his arms were interlocked with a group of counter-protestors who were shouting obscenities, chanting anti-police slogans, and banging a drug. A law enforcement officer testified that Hutzel "was part of this group that was acting what I construed violently. He was asked to take the mask off multiple times, but never did." The officer further testified that it seemed that the group was "trying to get around behind us . . . as if to encircle us" and that he was afraid of the group. Hutzel testified that he was wearing the mask solely to protect his identity, but it is the jurors role to determine witness credibility and they were free to reject Hutzel's testimony. See *Slaughter v. State*, 278 Ga. 896, 896 (608 SE2d 227) (2005). Accordingly, the facts were sufficient to permit the jury

19 or other infectious diseases. See Ga. L. 2021, Act 18, § 1.

to determine beyond a reasonable doubt that Hutzel intended to threaten, intimidate, or provoke the apprehension of violence, or acted with reckless disregard for the consequences of his conduct or a heedless indifference to the rights and safety of others, with reasonable foresight that injury would probably result. See *In the Interest of I. M. W.*, 313 Ga. App. 624, 626-627 (1) (a) (722 SE2d 586) (2012).[7]

(b) Obstruction of an officer.

The accusation charged that Hutzel "did knowingly and willfully hinder . . . a law enforcement officer . . . in the lawful discharge of his official duties by failing to remove a mask upon a request to do so by a uniformed officer." See OCGA § 16-10-24 (a) (defining misdemeanor obstruction of an officer). "Refusing to obey lawful commands of an officer who is seeking to protect his safety will sustain a conviction under this statute." *Arsenault v. State*, 257 Ga. App. 456, 457 (1) (a) (571 SE2d 456) (2002).

The law enforcement officer testified that Hutzel's arms were interlocked with a group of counter-protestors who were behaving violently and that he was

---

[7] Because the evidence was sufficient to convict Hutzel of wearing a mask to conceal identity, we need not address Hutzel's enumerated error that the obstruction conviction should be reversed because it was inextricably intertwined with the mask conviction.

7

intimidated by the group. Hutzel admitted that he refused to comply with the officers' request to pull down or remove his mask. Accordingly, the evidence was sufficient to sustain his conviction. See *Arsenault*, 257 Ga. App. at 457 (1) (a); *Imperial v. State*, 218 Ga. App. 440, 440 (461 SE2d 596) (1995).

2. Hutzel contends that the trial court erred by denying his constitutional challenge to OCGA § 16-11-38.

In the Georgia Supreme Court's order transferring this case to this Court it stated that

> [the Georgia Supreme Court] has previously rejected a facial constitutional challenge to the statute, see *State v. Miller*, 260 Ga. 669 (398 SE2d 547) (1990), and addressed the standard for conviction under the statute, see *Daniel v. State*, 264 Ga. 460 (448 SE2d 185) (1994). And [Hutzel's] constitutional arguments seek merely to challenge the correctness of those decisions.

*Hutzel v. State* (Case No. S20A1257, decided August 10, 2020).

Accordingly, because OCGA § 16-11-38 has survived a constitutional challenge, this claim has no merit.

3. Hutzel contends that the trial court erred by denying his special demurrer to the wearing a mask to conceal identity count of the accusation.

8

The accusation charged that Hutzel

> while upon the area . . . being a public way, did unlawfully wear a mask, by which a portion of his face was so hidden as to conceal his identity, with the intent to threaten, intimidate, or provoke the apprehension of violence did so with reckless disregard for the consequences of his conduct, to wit: [Hutzel] did wear said mask during a rally of the National Socialist Movement[.]

See OCGA § 16-11-38 (a) (A person is guilty of a misdemeanor when he wears a mask . . . by which any portion of the face is so hidden, concealed, or covered as to conceal the identity of the wearer and is upon any public way or public property.) Additionally, in order to convict someone of violating OCGA § 16-11-38 (a), the State must prove "that the mask-wearer (1) intended to conceal his identity, and (2) either intended to threaten, intimidate, or provoke the apprehension of violence, or acted with reckless disregard for the consequences of his conduct or a heedless indifference to the rights and safety of others, with reasonable foresight that injury would probably result." *Daniel*, 264 Ga. at 464 (2) (b).

"An indictment or accusation must include all of the essential elements of the crime charged." *Davis v. State*, 272 Ga. 818, 819 (1) (537 SE2d 327) (2000).

> The true test of the sufficiency of an indictment to withstand a special demurrer is not whether it could have been made more definite and

9

certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

(Citation and punctuation omitted.) *Andemical v. State*, 336 Ga. App. 661, 664 (2) (786 SE2d 238) (2016).

We review the trial court's denial of a special demurrer de novo; however

we apply different standards when we review rulings on special demurrers pretrial and post-trial. When reviewing a ruling before trial, we consider whether the indictment is perfect in form and substance, but when reviewing it after trial, we consider whether the defendant suffered actual prejudice from alleged deficiencies in the indictment.

(Citation and punctuation omitted.) *Picklesimer v. State*, 353 Ga. App. 718, 721 (1) (839 SE2d 214) (2020). Here, we are reviewing the accusation post-trial, so we focus our analysis on actual prejudice. Id.

Hutzel cannot show how he was prejudiced by being tried on this accusation. Because the count at issue "used the language of the statute, included the essential elements of the offense, and was sufficiently definite to advise [Hutzel] of the charge against him and enable him to put forth an adequate defense to [wearing a mask to

10

conceal identity] it was not subject to special demurrer." *Andemical*, 336 Ga. App. at 665 (2). See *Davis*, 272 Ga. 820 (1); *Hairston v. State*, 322 Ga. App. 572, 576 (2) (745 SE2d 798) (2013).

4. Hutzel contends that the trial court erred by denying his two motion in limines.

"A trial court's ruling on a motion in limine is reviewed for abuse of discretion." (Citation and punctuation omitted.) *Carver v. State*, 324 Ga. App. 422, 423 (750 SE2d 735) (2013). "In reviewing the denial of a motion in limine, this Court must construe the evidence most favorably to the upholding of the trial court's findings and judgment, and we cannot reverse a trial court's ruling absent an abuse of discretion." (Citation and punctuation omitted.) Id. "A party's motion in limine to exclude evidence as inadmissible should be granted only if there is no circumstance under which the evidence is likely to be admissible at trial." (Citation and punctuation omitted.) *Lewis v. State*, 306 Ga. 455, 461 (2) (a) (831 SE2d 771) (2019). Accordingly, "the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." Id.

Hutzel argues that the trial court erred by denying Hutzel's motions in limine to prohibit any mention of the word "Antifa" and any mention of the wooden shield.

11

"All relevant evidence shall be admissible[.]" OCGA § 24-4-402. "[R]elevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. OCGA § 24-4-401. "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. OCGA § 24-4-403.

Here, testimony regarding the protestors and counter-protestors and the groups that each belonged to, NSM and Antifa respectively was relevant to explain the presence of law enforcement on the date of the rally. Additionally, a law enforcement officer testified that both groups were known for violence which helped explain the state of mind of the law enforcement officers when they approached the group of masked counter-protestors. The fact that one counter-protestor had a wooden shield with exposed screws was also relevant to explain the course of conduct of the law enforcement officers. Accordingly, the trial court did not abuse its discretion in

12

denying both of Hutzel's motion in limines. See *Lewis*, 306 Ga. at 461 (2) (a); *Carver*, 324 Ga. App. at 426.

*Judgment affirmed. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps, J., concur*.